Good morning. I don't know whether to look at you on the screen or in person. Good morning, your Honor. It's Arthur Schwartz, Advocates for Justice with the Appellants. The key issue in this case, not the key factual issue, but the key legal issue is, is there, does the district court have jurisdiction over the district court? Does the district court have jurisdiction to issue a preliminary injunction before an agency takes a final action? Because ultimately, in the case, in the decision that Judge Preska issued below, she said that we should have sought a preliminary injunction before HUD acted in the way that it did. We had a situation here where the appellant, the plaintiffs, had raised a number of issues to HUD. Through me, in letters, and had been told by, including some very critical issues. One of which was, is NYCHA eligible to be a housing authority that can participate in the RAD program? And we had submitted our argument to HUD. We had also argued that the entity that was going to be the RAD, the recipient of the property, and take over this series of 15, 17 buildings, was that the entity that was being presented as the RAD participant was a front for private entities. And that also violated the regulations. The person at HUD with whom I communicated took the information in and said she was going to interview people. And she said that HUD was going to engage in fact-finding, which implied to me that we would get a fact-finding result before they issued their final decision. Unfortunately, the next thing that happened was the tenants got notice that something had already happened in February. The transaction had already closed. And that CNC management was now the managing agent. And that people had to sign leases with them. May I ask, I understand you're making essentially a timing point. You couldn't have brought the motion for preliminary injunction prior to the final rule. Because there wasn't time. There wasn't time? Well, first because it wasn't a final decision. And second, by the time we knew about it, it had happened. Okay. So let me just press. Let's say there had been a time gap that gave you the ability to move for a preliminary injunction at that point. I presume you would have done so, yes? Yes. And would you have made an argument there for irreparable harm? Yes. And what would that argument have been? Because these were public sector housing tenants that had rights as public tenants. Whose property, the leases that they were, which they had rights both under the leases and under federal law, were being transferred to a private entity. Which changes the whole dynamic of their relationship with their landlord. So why would it have been irreparable? Because irreparable just means it's not remediable by money. That's what irreparable means. It doesn't mean you're going to die. And in the regulations, I read the regulations very carefully. The regulations gave HUD, upon approval, 30 days to close. So we did assume that if they announced to us, this is our finding, this is our fact finding, we're going to approve it, that they weren't going to do it that day. But they announced their decision on the same day that they did the closing and maybe the next day they transferred all the assets. Hundreds of millions of dollars worth of assets over to the private entity. But I can tell you that even if they'd given me 24 hours notice, I could have been in court. I do it all the time. And so what if the response to the irreparable harm argument you made was, well, if you prevail at the end, we'll rescind the conversion? You mean if I didn't seek a preliminary injunction? No, if you sought a preliminary injunction and in response to the argument you just made about irreparable harm, the other side said, well, it's not irreparable because you can just undo the conversion. But then my lawsuit wouldn't be dismissed. I just wouldn't get a preliminary injunction. No, I'm just asking, what would your response to that be? I would have responded, as I said to you, it's not something that the day-to-day effect of this, losing your relationship with the government agency, is irreparable. But I would have still been left with a lawsuit that I could have litigated. I was dismissed. I wasn't denied a preliminary injunction. We're not appealing denial of a preliminary injunction. We're appealing the decision on a motion to dismiss. The court didn't say there's no irreparable injury here. I want to make sure I'm sort of reading the tea leaves right here. I'm not hearing you come up and say the central question in this appeal is whether this transaction can be undone. I hear you focusing on trying to figure out what the mechanism is, if any, for a pre-final agency action opportunity to get some sort of maintain the status quo relief so that you have time once there is a final agency action to bring a case. Is that, am I... No, no, because I am saying that whether it can be undone is not the issue. The issue is whether the court can issue effective relief that addresses the situation. So what is effective relief? Undoing a financial transaction means moving money back. That's all. This is a financial transaction. That's all that's happening. But also, Your Honor, what's really critical here is this is like one of 90 projects in the city. And if the court had said, well, this can't be undone, but we ask for declaratory relief. But HUD made an error when they approved NYCHA as not a failing public housing authority. HUD made a mistake when they allowed a private entity to create a sham not-for-profit and say that they were the real RAD recipient. That would have been effective relief because the issue itself goes way beyond this one series of houses. So I think that's what I'm getting at. You've got this queue of other potential cases in the harbor. And I understand you'd like us to reach sort of a merits issue that impacts those. But if you came out of this case with a roadmap that says, this is the mechanism you can use to initiate your challenges to these others so you're not caught in the bind that you find yourself in now, would that address the most dominant concern that you bring to this appeal? The most dominant concern is getting relief before the events happen. Yes, that's the most dominant. And I have been in court. The record shows I've been in court, not against HUD, but against C&C Management, which was already acting like it was the landlord. They were ordering tenants to sign leases. They were renouncing renovations of apartments. They were acting as the caretakers. We went to Judge Preska. Judge Preska had the case, and she dismissed that case. Actually, no, the case was still ongoing at the time. It wasn't like we just came out of the blue. We had been litigating with C&C and NYCHA. We were complaining to HUD. Everybody was aware of what we were doing. Here's the irony of the arguments from my perspective. In order to say, look, this would be profoundly unfair to say you can't undo this transaction, you're arguing because we didn't have any opportunity to do it before, and these other mechanisms don't work and can't work. But I'm wondering whether you would actually be happy with a court decision that said, yes, those mechanisms can work and do work. And the flip side is true on the other side, right? You had all these other options available to you that they may have taken a different position if you'd actually invoked them. I'm not sure what mechanisms can work. In state court, you can use Article 78 before an agency act and try to prohibit them from doing that. I'm in the middle of one this week with Beth Israel Hospital. We had a case where we had a judge go to court and say agency, and it's a decision law we cite, agency, don't do this, or don't do it without notice to the court. There's not a single case that allowed that. I think there was one case involving some drug manufacturer where there was going to be approval of a drug and not, which is pretty, that's impossible to undo. I thought the argument was not that you could come in and say agency, don't do this. It was that you could come in and you could get an order that said agency, if you do this, you need to defer the effective date for some period of time, whether it be a week, 30 days, in order to create the opportunity for review. Because this one-two punch where the agency makes a decision and then the implementation through a transaction that involves a bunch of parties that aren't even necessarily implicated in the agency decision directly take actions that can't be undone. That's what I thought the argument was. But I didn't find any case where anybody successfully did that. I looked through every APA decision that was ever issued. So you wouldn't want an order from us saying that was, in fact, a possibility? If you say that's a possibility, but that doesn't necessarily, I don't want an order saying that was a possibility and there's no case where it was ever done. That could be a good thing for plaintiff's lawyers like me, if you could get that time. I had reason to believe, given what HUD said to me, that they were going to do a fact-finding, that I was going to get notice before they acted. That's an important part of the record. We made the complaint. They said they're in a very preliminary stage. This is just a preliminary application. We're going to do an investigation. We're going to talk to your clients. We're going to do a fact-finding. I'm assuming that my father told me bad things about the word that's going to say, sorry, we're denying your complaint. We're going to move forward because NYCHA is eligible. So I didn't need to come in. Perhaps if they said, sorry, we'll tell you the decision on the day we close, maybe I would have run in. I understand that there was maybe a week gap between the approval and the actual closing? No, there was about a two-day gap, but I didn't know about it. I knew about it when the attendance got a letter, which was a week later. It isn't like HUD even said to me, sorry, we're closing tomorrow. We made a decision. Or we close today. Maybe I could have run in at night and tried to get a TRO. So what is the specific declaratory relief that you're seeking? The declaratory relief we were seeking was that NYCHA was not eligible to participate in the RAD program because they were a failed public housing authority. In their brief, HUD drops some footnote that, oh, in fact, they're on the good PHA list. If we had known that, that's something we would have challenged. U.S. versus NYCHA says they're the most horrific agency in the world, and somehow they're still on the well-performing list. If we knew they had done that, that would have been an interesting piece of litigation. They didn't announce that publicly somewhere. So the determination of what the designation is that was made in 2016 is not a matter of public record? No, because in 2018, the public record was USA versus NYCHA. No, no, but there's this formal title that gets assigned, right? Whether you're a standard performing or high performing or whatever, it's not a sort of evaluation of the facts at a given moment. It's the designation you bear until it gets changed, I assume. I'm wondering whether that designation is a matter of public record in the bill. It's not a matter of public record when we complain to HUD. Ms. Overdyke didn't say to me. I think that was her name. Oh, Ms. Alex. She didn't say, oh, they were on our list of successful PHAs. I might have gone to court immediately if they had said that. I wasn't aware of that until it was dropped as a footnote in the brief. And maybe it's still subject to some, except maybe when they made that final decision. I mean, it sounds like they called them successful in 2016. They sued them as an abject failure full of people lying to the government and destroying people's lives. In 2018, somehow some administrator didn't take away the successful PHA designation. How one would deal with it. But I was looking for the, go back to your question. How does this transaction destroy people's lives? You just said it destroys people's lives. No, I said NYCHA. NYCHA. If you read USAverse and the facts that we allege about the horrific conditions that people live in. Lead, lead paint. This arrangement, which is extremely complicated and cannot be undone. It's like unringing a bell and putting toothpaste back into a tube. It's going to result in the renovation of apartments. And I don't understand this. I mean, there must be people who live in NYCHA housing who, unlike your client, would like their apartment to be renovated and made new. Or when you're complaining about how terrible NYCHA is as a landlord, that may be very well be the case. But then this transition to Section 8 could be responsive to that. And I don't understand why you, as opposed to the city, the state, the federal government, decides how to fix these serious problems with the New York City Housing Authority. There are various opinions about how to fix the New York City Housing Authority. Yes, but the thing is, who decides that? I can tell you, Judge. The advocates for justice? Or the city, the state, the authorities, and the federal government? There have been many proposals about how to do it. In fact, the state now has set up a thing called the PAC. There are a lot of proposals, but there are people who are authorized to do this. They're elected. They're appointed. And their decisions can be challenged. And, in fact, I would say to this day— But I don't see how they can be undone. These funds have been moved. Transactions have been done. Leases have been changed. They're already renovating the apartments. I just don't see how you can get any relief here other than a declaration that basically says, you decide, rather than the city, the state, the federal government, what arrangements ought to be made for people in public housing who are suffering. It's not that we decide. Because the government makes a decision. Well, the government makes a decision that involves millions of dollars. First of all, this is about money. Money moved. Money can get moved back. There's no way that that cannot happen. Are all of the parties involved present in this lawsuit? No, they're not. Are all the parties involved? If you want to undo these transactions, you're going to have to affect people, agencies that are not here. I believe we sued— Yes, we sued all of them. I did sue all of them. They're all defendants. They didn't appear in the appeal, but they're—we sued— If you look at the caps in my brief, New York City, besides HUD, New York City Housing Authority, Harlem River Preservation, LLC, and C&C Apartment Management, LLC. What about the shareholders? They're investors in these transactions, are they not? They were what? They're financial investors in these transactions. No, there was government money that was— It's all government money? The government gave them money. It's all government money? The government either gave them money or signed— I thought you said it's private. No, no, no. C&C Management and the contractor, who's going to get most of the money, who's going to do the repairs, they're private entities. They set up a front organization called Harlem River Preservation to act as the conduit because the statute requires that it go through a not-for-profit. But the private entities are C&C Management and one of their cohorts. They all work together under Harlem River Preservation, LLC. If you look on the website, it has—and in the complaint, it says they have four— I think you're making the case this is a fantastically complicated transaction that you're asking to be undone or to be condemned. There could be effective relief. To say that, then, this is a government decision that can't be challenged. That's basically what is being said. You can't go in ahead. Afterwards, it's too hard to— So, therefore, HUD makes a decision on this that can't be challenged. You can't challenge it before. You can't challenge it after because it's too complicated. I can tell you because I talk to Ms. Diaz every day. There's still mold running up her wall. There was still water running through her apartment. There was still failure to provide heat. It's not Nirvana that came out as a result of this thing. Nirvana is not usually the product of the New York City Housing Authority, but what we have here is a complex arrangement to try to solve the problem of what you call a failed agency, a failed authority with very good— with very good reason, but this is a very complicated, ramified, expensive solution that has been proposed, and you want to prevent it from happening. I want to create safeguards that don't exist, and I actually believe, Judge, when you look at those transactions, they moved whatever $400 million to this construction company to do the construction. Why couldn't they move $400 million to NYCHA or to the State of New York or the City of New York to do the same work? I don't understand. I never understand that except that. That's not my department, and I'm not sure it's yours. Any other questions? We'll have an opportunity to hear from you again in rebuttal. Thank you. Mr. Osmond. Good morning. May it please the Court. Mark Osmond for the U.S. Department of Housing and Urban Development. Plaintiffs cannot establish the redressability element of Article III standing. They have alleged injuries resulting from the conversion of Harlem River houses from a housing project subsidized by Section 9 to one that's subsidized by Section 8. However, plaintiffs have never seriously attempted to explain how the conversion could be undone or how their injuries could be redressed. Is it the case that some people will be moved out of their apartments for renovation but won't be able to move back into them and may not be able to move back into apartments that are the same size? Yes. I think that is purely speculative, Your Honor. Renovations will be done on apartments. People have a legitimate concern about not being able to move back into the apartments that they live in. There's no allegation that anybody has not been able to return to their apartment. I think what you're alluding to is what plaintiff refers to as right-sizing, and this is where landlords ensure that the household composition matches the apartment that they're in. If two people move out of a three-bedroom apartment, they can't move back into that apartment because that's not right-sized, correct? I believe that's so, but both under Section 8 and Section 9, residents should not be living in apartments that don't match their household composition. So this is not unique to Section 8 housing. Can you, I mean, there's the whole unwindability, and I'm guessing that's what you're about to talk about. I'm really interested in the question that your counterpart led with, which is, okay, if this can't be undone, what were our options? And how does the agency that's reviewing lots of these RAD applications, and so I'm interested in your take. I take it it's not a rulemaking nor an adjudication? It's neither of those? The RAD approval process? The RAD approval process is done pursuant to a notice, which is how demonstration programs like this are carried out. Okay, so what is the mechanism as the agency that you would expect, understanding that there are these ripeness issues and the APA typically doesn't let you challenge an action until it's a final. What's the mechanism, or is there none, for folks like this tenants group who want to challenge a future RAD? So as an initial matter, I just want to make the point that the issue is, the issue here on this appeal is broader than any preliminary relief that plaintiff could have seeked. The question is whether any relief is available now. But with that said, if you look at page 93 of the RAD notice, section D, it specifically requires public housing agencies, here NYCHA, to notify residents that HUD has approved the transaction. And here, although this is not in the record, I've learned that residents were informed on February 14th, four days before the closing, that HUD had approved the transaction. So there was a window in which plaintiffs could have sued. So is that your argument, that that's the only – there isn't, in fact, relief available to try to maintain in advance, ensure that the status quo will persist for some period of time before the closing? Well, I would just note that there was a window in which plaintiffs – I understand. There's the four-day window. But I'm asking whether that's the sum total of the opportunities that these folks had. You disagree with the district court that there were opportunities to take action sooner to prevent this? Well, plaintiffs do not dispute that on February 18th of 2022, they had notice of the closing. In theory, they could have gone to court within 24 hours, or 48 hours, or 72 hours, and sought a preliminary injunction or a temporary restraining order under Rule 65. They didn't do that. Instead, they waited three weeks to file a complaint. They never sought preliminary relief at that point. So whether this could have somehow been undone had plaintiffs gone to court on February 18th is an academic question. On the day of the closing, did all of these transactions take place? The money was transferred. The deeds were transferred. The authorities were granted. Everything happened at the closing. My understanding is that everything happened at the closing. So that at the closing, right after the closing, you had a thing that would have to be undone in a very elaborate way. I think it would have been very difficult to undo after the closing. But three weeks after the closing, I think it became all the more difficult to undo. And now we're two years after the closing. There's a $220 million renovation that is ongoing. Various apartments are in various states of rehabilitation, demolition. If this conversion were undone, these improvements would presumably stop, which would only harm Harlem River residents. So I think that's important to keep in mind. Even if something could have been done the day after the closing, now we're two years after the closing. And at no point have plaintiffs sought preliminary or emergency relief. Right. I want to come back to this question. I noted that your brief was very careful about talking about the portion of the district court's analysis that identified purported opportunities to come in earlier. And your brief says if plaintiffs had not failed to seek preliminary relief, the conversion may have been reviewable. And then you sort of talk about this, may this, may that. And so when I asked you now what preliminary relief is available, you've carefully avoided talking about anything that they could have done prior to the final agency action. And I'm trying to press you as a representative of HUD as to whether HUD's position is that there is or is not preliminary relief available under 705 of the APA to require it to defer any final decision to approve this, the effective date for some period of time to allow for notice and response. Sure. So what we're doing when we say that plaintiffs could have sought preliminary relief is respond to their argument that we must have Article III standing now because we couldn't have sued earlier. So we're responding to that argument, but there's no exception to Article III standing that applies when plaintiffs couldn't have gone to court sooner. So I just want to make that point clear. The court does not need to reach the issue of any preliminary relief that plaintiffs could have sought. But you could see why a court might be concerned leaving in place a state of affairs because there's no requirement of any delay, right, between the final agency action and the closing. Is there a requirement for some period of delay? Well, there actually is, Your Honor, and I'd point you to page 93, Section D of the RAD Notice, and that requires residents to be notified of HUD's approval in advance of the closing. So there is a built-in window. But there's not a timeline. It could be 24 hours in advance. It doesn't say 30 days or something. I'm not aware of any timeline. I believe that the closing has to take place within 90 days, but there is no minimum time. There's a maximum time. I believe that's right. As a practical matter, I think it's going to take a while to put together this documentation and schedule a closing, so there's no indication here that the parties rushed to close within 24 hours. Well, but if it happened within four days, I'm guessing the paperwork was somewhat in the pipeline. I can't imagine all of these complex transactions that are so complex that we couldn't possibly unwind them came together in four days. That's probably a fair assumption. I'm sure a lot of the paperwork was done, but I'm sure that it needed to be refined in that period of time. So coming back to my question, and I understand your argument about why we don't have to reach this issue, but I'm interested in it because it helps me understand the overall framework. I understand that HUD doesn't decide when a case is right, but I'm interested in HUD's position as to whether Section 705 of the APA allows an interested party to seek preliminary relief before final agency action to maintain the status quo in the event of a final agency action for some period of time. That's not something that HUD is taking a position on in this case because it is an academic hypothetical question, but I will just say that the text of the statute specifically allows agencies to defer the effective date of an agency action, and here plaintiffs didn't even ask that that effective date be prolonged. But if it's your position that that would have been a futile gesture because it's not a relief that's available anyway, then that wouldn't have mattered. All I can say is, again, we're just responding to an argument that the plaintiffs have made. I don't think this argument has any bearing on Article III standing, which is the issue that's before the court. I understand plaintiffs obviously focus on this issue, so I understand the question, but I do just want to emphasize that there's no exception to Article III standing that would apply where a plaintiff would have had trouble suing earlier than they did. So it is possible that this statutory scheme just contemplates an unreviewable final agency action to do a RAD conversion? Given page 93, Section D, which requires public housing agencies to give residents notice, I don't think that's so. The language is notice in advance? In advance. And so in advance could be moments. There's nothing that would restrict. I think you answered this to Judge Hopkinson earlier, but nothing that would restrict immediate action following notice. I don't think there's nothing in the notice that would prohibit immediate action, but this is not that case. There was a four-day gap, and plaintiffs' counsel has just represented that he could have been in court within 24 hours. So I think there was more than sufficient time for... And just, I want to play off the hypothetical I asked the other side. If you had to, within that time gap, would you have fought on the irreparable harm prong? It's hard to know in the abstract what we would have argued had a preliminary... Presumably they would have said, you can't unring this bell once it's rung. It's too complicated a transaction, and so you have to stop it or we'll be irreparably harmed. And I think that is essentially your position now, post-conversion, isn't it? Well, irreparable harm is obviously one element of a preliminary injunction. There's also likelihood of success, and I don't think plaintiffs could have... No, I'm just asking about irreparable harm. I understand, Your Honor. Given that this... Again, it's an academic question that I can't give a firm... That's the nature of hypotheticals, I suppose. That's very true. I think it would have been difficult to show that this injury were irreparable, that it wasn't irreparable, given the difficulty of unwinding it. Your position here on redressability, I think, is essentially a concession that it would have been irreparable pre-conversion. I understand that it could be, that our argument would support plaintiffs' counsel's argument in a preliminary injunction application that there would be irreparable injury. I don't deny that. So if going forward, plaintiffs... Let's assume this particular RAD conversion is a done deal, but there's a cue, and we have a tenant's entity that believes they have a legal case to say that NYCHA is not eligible to be a Section 9 that converts to a RAD conversion to Section 8. Is there a path for that issue to be litigated in a court before another conversion takes place? I think if those tenants had sued after a final agency decision was rendered and before the closing... Okay, so that's the path. They have to get the notice, because if the closings... There's nothing that would prevent the closing from being the next day. The notice goes out, the closing happens. Again, that's not this case. I don't think the RAD notice expressly prohibits that as a practical matter. I don't think a closing would be scheduled on a moment's notice, but I understand Your Honor's point that the RAD notice on its face doesn't rule out that possibility. Thank you. I would just add before sitting down that a reversion to Section 9 wouldn't be possible for two key reasons. First, Harlem River houses cannot now satisfy regulatory requirements applicable to Section 9 projects, and second, the conversion was completed, as I mentioned, two years ago through a series of complex financial, corporate, and real estate transactions involving numerous parties, which, as Judge Jacobs noted, most of whom are not before the court, these transactions simply cannot be undone at this point, and for this reason plaintiffs lack Article 3 standing. If there are no other questions, I'll sit down. Thank you. Thank you. I want to start by addressing this. I got an email the day before last. Oh, we discovered this notice that NYCHA sent out to the tenants. This is a two-year-old case. We just discovered this notice that NYCHA says it sent out to the tenants, and my response was, I can't deal with this. I'm on a train going to Albany. I had an argument in the Court of Appeals yesterday. It was, do you believe them? Two years later, this document, you want the whole case to turn on this document. You say they got notice a day in advance. The lawsuit that the judge dismissed, and these facts were not challenged, because even though this was a motion to dismiss, there were about 12 affidavits that were put in by the government about the details of the transactions and all the mortgages and all the whatever. They never put in a, oh, we gave them advance notice. First of all, it's not true. I wouldn't believe a word anyone at NYCHA said about anything. So just so I'm clear, is there anything in the record, and obviously something that you got on the train two days ago is not going to be in the record. Is there anything in the record that tells us, we've heard a lot about page 93 of the RAD notice, which says that notice has to be given. Is there anything in the record as to whether notice was given? The complaint alleges that notice was given by CNC management, and we attached the notice. It's in the record. I don't have the page number. After the closing. After, on the 18th. And all the closing, according to Ms. Rudman's affidavit, happened on the 17th. What does that notice have to say? It says, the RAD process has gone through. We are now, Harlem River Preservation is now in charge of your, and if anyone who hasn't signed the lease should sign the lease. So that's a notice that takes place. It's required to be sent after the transaction. Well, he says that NYCTA had to send a notice before, not the new entity. I'm asking you about the RAD notice that you said had to be sent. I didn't say it had to be sent. Counsel said. He says, if it says in the regulations, it would be shocking. What does it say in the regulations? The notice has to say, and when does it have to be sent? Counsel says it says that it has, this is an argument, not raised. I said argument for the first time. So you're not aware of the regulation that would require that it's in the notice. But NYCTA didn't do it. Whether the regulation says they have to do it, NYCTA didn't do it that they discovered it two years later and it's not in the record, to me is phantasmagorical. So why does it matter as a doctrinal matter with respect to Article 3 standing and redressability? I mean, it sounds like, from a fairness perspective, 100%, but tell me how it fits into any authority or law with respect to standing. Well, it fits into counsel's assertion that somehow I could have stayed up all night and been in court. No, I understand that. I'm asking, does it matter? Does it matter if you had an opportunity? To the extent it's being proffered to show that you did have an opportunity to sue in advance. It's your position it doesn't matter. No, my position isn't that it doesn't matter. It would matter. To give overnight notices, maybe it's too bad. If you get a notice that says you have to get noticed, you get noticed and you have 24 hours to go to court. I mean, it happens all the time. But it didn't happen, there's no allegation in the complaint that it happened. There's nothing in the record that it happened. So we're not dealing with the red maps. Are there allegations in the complaint that you didn't have an opportunity to sue prior? Yes. Okay. So you think it does matter? It does matter that we couldn't sue in advance. And what law or authority do I look to to see that that matters to the question now of the redressability of the harm? Well, it goes to the finality requirement in all the cases I cite. Finality requirement of the APA is the key. We didn't sue HUD. As a ripeness matter, you couldn't have sued. As a ripeness matter. So if we'd known a day in advance, you could theoretically say we had 24 hours to run to court. You know, it's done. Right, but you've raised it here, post-conversion. How does that, what law do I look to, what cases do I read to see why that matters for purposes of whether the injury can be redressed now? Whether the injury can be redressed goes to the cases we talk about, whether there is any effective relief which can be granted. Which may not be 100% relief. Effective relief is what the court can, that's what the case law says. Can the court grant effective relief? And effective relief could have been put the money back. Effective relief could have been a declaratory judgment that it was wrong. Effective relief could have been freeze it where it is now. The guys that have the money, you know, you're not going to have to pay back what you already spent and did construction on it. How does a declaration now that, how does a declaration now give your client effective relief? Because it affects their, my clients live in a development with about 7 or 8,000 people. It affects 200,000 other people that live. This is like. What do they do with the declaration that. Then it can't go, then NYCHA can't do this anywhere else. So it doesn't affect them, but they get the victory that helps other people. It helps other people. Okay. Unless they want their apartments renovated, then it doesn't help them, does it? I didn't hear. I'm sorry. Unless they want their apartments renovated, then it doesn't really help them, does it? They all want their apartments renovated, and NYCHA's been promising that forever. And not delivering it. And you know what? Neither has, two years later, it hasn't been delivered with these people either. I'm telling you, as a matter of fact. Appreciate your arguments. Thank you. Thank you. Very much. Thank you.